Good morning, and may it please the Court. My name is Adam Charnas, and I represent the appellant in this case, and I will try and reserve five minutes for rebuttal. This appeal presents two issues. The first issue is whether DirecTV's successive removal of the case from state court was proper, and the second issue was, assuming that the district court had jurisdiction, whether it correctly abstained under the comedy doctrine. And I'll start with the removal question first. That's been decided. This case is in federal court. We agree, Your Honor. Yeah, you've moved to remand. Well, they've moved to remand. They moved to remand, and the district court remanded it. The district court addressed the merits of the abstention question, so at least implicitly the district court I got it. Okay, thank you. At least implicitly, the district court rejected the argument that the second removal was improper, and we think that rejection was proper, or was appropriate. The city argues that a case is removable whenever there is original jurisdiction in federal court, and therefore argues after the first removal there was original jurisdiction, it was remanded based on an abstention doctrine, and therefore, Direct TV was not allowed to remove a second time. Let's say hypothetically that you were allowed to remove it a second time. When did that 30-day guideline kick off? You cite the district court's, or I'm sorry, the state court's order, which was at the end of December, I think, 2021, anyway, the end of December. Opposing counsel suggests that you were on notice, I think, earlier that year in January, I think, at the end of January, when it appeared on the face of one of their pleadings, that they had, as you describe it, changed their position on the fee versus tax. Now, why doesn't that put you on notice at that point? Because I think 1446B3 says, yeah, it mentions an order, but it also mentions an amended pleading, a motion, from which it may be first ascertained that the case is removable. Now, you knew they had switched positions. Why did you wait until the state court issued its order? Well, you're absolutely right. We knew they switched positions, but we disputed that position in state court. Our position in state court was that this was a tax subject to the Hancock Amendment under the Missouri Constitution and therefore dismissible. Simply because they were taking the position that it was a fee didn't mean that the state court was going to agree with that. The state court might have agreed. But it did mean at that point that you probably could have had a removal petition at that point, right? I don't think so, Your Honor. I think there are certain circumstances in which a pleading, a party's pleading, by itself establishes federal jurisdiction. In the normal course, right? The first removal, that's almost always the case. There may be exceptions, but you rely on the plaintiff's pleadings. Well, yes and no. I mean, the best example is amount of controversy, right? In a lot of states, the state procedure doesn't require you to plead damages amount. It's, you know, the defendant removes, the plaintiff says we're only seeking $68,000. Federal district court remands. You do discovery. You do discovery. When the plaintiff says something, it could be in an interrogatory answer, it could be at a deposition, any paper, it says we're seeking $89,000. That starts the clock. Here, their position was they switched positions. In federal court, they said this is a tax to invoke the Tax Injunction Act and Comedy Doctrine. As soon as they got to a fee, but we said no. We said that's a tax. Their position is we should have removed then. At the same time, they wanted us to invoke federal jurisdiction by saying that this is a fee, not a tax, while we're simultaneously arguing in court that it's a tax, not a fee. I mean, that would have been requiring us to take inconsistent positions. As soon as the state court, excuse me, said this is a fee, that's established for the purposes of the case that it was a fee, and therefore, we believe that triggered our right to remove again. That's an important holding here. The fact of the matter is that Levin Comedy Doctrine, and Levin, of course, is the Supreme Court's most recent explication of comedy, applies to offensive actions filed by taxpayers seeking to bypass and avoid state law tax refund and compensation. The Supreme Court, to my knowledge, has a specific process if you want to protest taxes. Typically, you've got to pay first, so the taxes... No, sir, you don't pay first on most taxes, sir. Go ahead. And then you have to file a... It's technically a once account, income tax and so on. You can go to the administrative hearing, but proceed. Well, you're imputing your view of what the Supreme Court thinks is important on this comedy doctrine, as opposed to what they've said about it. That whether revenue is more important or not, that's procedural stuff. Well, I think, first of all, Judge Benton, we're relying on Missouri Statute 139.031, which does say that... That's the catch-all. Right. But there is a set procedure. You have to file a protest, and then you can go to state court. Other states, as Your Honor alluded to, have much more intricate requirements. For example, in Maryland, you've got to pay, you've got to file a protest, you've got to ask for a refund from the tax commissioner, then you've got to go to tax court. But as Judge Loken said, that's only one aspect of the Supreme Court's holding. The other is interference with revenue, right? Well, I think that's... The Supreme Court has mentioned that that is correct, but it's in the context of a tax. And it cannot possibly be that any lawsuit that... Does Levin specifically say our holding is limited to taxes? It doesn't. No, it does not specifically say that. What it does say is, and this is the You don't think we could bring out some dicta, I don't know, holding or dicta explanation focusing on the revenue importance of state revenue issues, and who should decide that? There is language, I will agree... Not only in Levin, but in lots of places. Well, yes, but that's... They're all in the context of... But put that aside. Just take my word for what the Supreme Court cares about. That's your argument. No, Your Honor. We're focusing on the language of Levin. And Levin focuses repeatedly as a law... You know how many times the court has told us, beware of taking our dicta as gospel? Well, I'm not relying on the dicta. I'm relying on the holding of the tax. And you agreed that it wasn't the holding. So what was it? It wasn't dicta. Oh, no, it was just language. No, I said there was no specific holding by the Supreme Court where the Supreme Court said this doesn't apply to fees, it just applies to taxes. Every Supreme Court case, with possible exception of the Boise Artisan case, which I'll get to in a moment... Oh, yeah, that was ancient history, right? I mean, I read that. Yeah, that's pretty significant. Yeah, but I think that case... I don't think the principle there has gone away. No, Your Honor, but I think Boise was a different case. There was a pending state court action filed by the city, a collection action. You can always distinguish cases factually. That's easy. Well, I don't think it's factually. I think it's legally. The fact of the matter is what the Supreme Court mentioned... That's the question. Pardon, Your Honor? That's the question. Right. It is suggested. I don't think it's... I'll just point out, Your Honor, the Supreme Court focused in Boise on that pending action, and it said two things of note, I think, here. Number one, that federal courts' equity jurisdiction should not be invoked when there is an available remedy elsewhere, and there was an already pending case. And secondly, most importantly for our purposes here, what the Supreme Court said in Boise was that the war company could have removed that collection action in state court if there was federal removal jurisdiction. And that's exactly what we've done here. There's federal removal jurisdiction. If there was federal question jurisdiction. I don't think... There wasn't diversity, was there? In Boise, I'm not sure, Your Honor, but if there is diversity in this case, that's undisputed. And what the Supreme Court said in Boise was that removal is perfectly appropriate if there is a legal basis to do so, and that's... Well, where did the Seventh Circuit go wrong in interpreting 11 in the Fishers case, which I think you want us to completely disagree with, right? Essentially, yes. Yeah, yeah. Yeah, we think the Seventh Circuit got it wrong. I won't mince words about that. The fact of the matter is that the Seventh Circuit, along with a number of district courts, essentially, we think have completely overread the Comedy Doctrine, equivalent to what a lot of courts did with Rooker-Feldman. If you remember, Rooker-Feldman Doctrine started as a very narrow abstention doctrine applied in specific circumstances, and many lower courts really blew it up to something much bigger. And the Supreme Court, about 10 years ago, had to put a stop to that and say, Rooker-Feldman is important, but it's a narrow doctrine. I think that a lot of the lower courts, and the City of Fishers is the best example, have overread Levin. I think what Levin applies to is interference. Levin comedy applies to interferences with the... Well, didn't Levin, and it's not squarely in front of my mind at the moment, but didn't comedy doctrine? Well, they, yes, they criticized... So now you're saying that we've boomerang back, following Justice Ginsburg's guidance to not underread it, and now we're overreading it. I think what they, what Levin criticized was the overreading of a footnote in the Hibbs case, where Hibbs was an establishment... But there was broader language in there, too, about not limiting the scope of comedy, if I recall. Right. So, you know, we think what Levin is focusing on is interference with state administration. And with respect to the revenue issue, this is a completely different case also, because in many states, most states, I think, in order to challenge taxes, you've got to pay first to preserve the integrity... You might carry, you might go on, because, I mean, I don't want my colleagues, I couldn't disagree more with the points you're making here. Okay, well, I'll move on to my second point, then. And the second... You know, it's your argument. But, I mean, your interpretation of what abstention doctrines mean, and what comedy means, and what the Supreme Court is focusing on... I disagree. Okay. Well, even if we're... And so did the Seventh Circuit. Yes. Well, the Second Circuit... Some very wise jurists. But even if we're wrong about Levin, there's a second reason why the remand was inappropriate, and that's Quackenbush. And this is an area where this Court has been emphatic. What Quackenbush says is that you cannot apply an abstention doctrine when the plaintiff seeks damages. And that's... That is not what it says. You've got it right handy. It says, holding is limited to common law actions for damages. Your Honor... As other Supreme Court cases, in my view, make it clear that courts of equity which have jurisdiction and authority to impose monetary remedies are outside Quackenbush. Yes. But what they're seeking here is a legal claim, a legal damages. They're not seeking monetary damage, equitable damages. Now, wait a minute. You're talking about count three. Count three. Counts one and two are my focus. That's true. Well, in this Court... Can we... Could we remand count three only? No. And the reason is that... Why not legally? Well, in the Yamaha case, in the Nycub's case, this Court addressed exactly that question. It said when there are both equitable claims and legal claims, that dismissal or remand is not appropriate. Now, the Court... What this Court has said and what... You just said something that's contrary to your position, I think. No. You just said we've held it if there's both equity and damages, we can't remand. Cannot remand. Here there's equity and damages and you want remand. No, no. We do not want remand. And what the Court has said is that... But that's not a holding that there's no authority. I disagree with that, Your Honor. Quackenbush is... You could say don't address count three. The State Courts have jurisdiction over count three. I think what the Court... What this Court has said in both Yamaha and Nycub's and picking up on Quackenbush and this Court's jurisprudence on Quackenbush is different to some extent than other circuits which have sort of read Quackenbush out of law. This Court has not done so. It said that if there are both equitable claims and legal claims, the most the Court can do in the abstention doctrine is stay the federal case while a state case proceeds. Now, in this case there is no state case. In a younger abstention, for example, there might well be a state case. And what this Court has said as well, the federal case can be stayed but it cannot be dismissed. This Court has expressly said that in Yamaha. It says claims for damages are... What if we invited a voluntary amendment that eliminated count three? I think count three was a casual mistake in pleading, not much more than substance. Your Honor, what they're actually seeking here is money, right? And without count three... Let me put it this way, Your Honor. So are a lot of declaratory judgment courts of equity plaintiffs. That's right. And Missouri law is clear under the Declaratory Judgment Act that if you have a claim at law, a claim for damages, you cannot just position it as a declaratory judgment action and seek to avoid that. You mean the power in ERISA cases, for example, to in breach of fiduciary duties which are limited, I think, to equitable remedies and monetary penalties are... Remedies are awarded all the time with the Supreme Court's blessing. You're saying Missouri does. No, that's not Missouri law. I'm saying Missouri law and, you know, I can cite cases now, we can submit a... A federal court of equity can award monetary remedies. That is correct, but your suggestion was that... Without offending the Seventh Amendment, for example. If they're not legal damages that are sought, that is correct. Wait, wait, wait, wait, what's the difference? Well, there is a difference, Your Honor, but I want to make a more basic point, which is your suggestion was that the case be remanded and they could proceed on counts one and two. No, I didn't suggest it. I just said could that... You hypothesized. All right, you know... And my point is that would not work because, for example, the city of... All right, so what? I wouldn't do that. I don't need to do that if it was my decision. I'm just... I'm going to ignore count three and focus on what is really at issue, which is a plaintiff happens to be a tax fee collecting plaintiff seeking a declaratory judgment that fees are owed. Well, I... If Your Honor will enter that equitable decree for full relief, I would add in addition that you order them to pay what's retroactively due. Right. Which they'd sue for anyway. But in substance, Your Honor, that's a claim for money. If I have a breach of contract action... Of course it's... If I have a breach of contract action against you for damages, it's not a real declaratory judgment if that's all I plead. If there's an adequate remedy at law, you're supposed to plead that. We should be back in the 18th century arguing in England for whether it's... whether it goes to the king's courts or the parliaments. Well, in determining whether a monetary claim is legal or equitable, the courts do look at those questions. But I'll... But, you know, Quackenbush didn't draw that distinction. Well, Quacken... I think what Quackenbush said and what this court has said following it is that if the plaintiff is seeking money, that dismissal or abstention is not appropriate. And I'll reserve... Now, wait a minute. I'm going to read it to you, and maybe I'm wrong. Maybe I'm remembering it wrong because the holding is quite clear. We have not previously addressed whether the principles underlying our abstention cases would support the remand or dismissal of a common law action for damages. There is no common law action for damages in this case. Well, Your Honor, I would refer to a different language, which is page 721 of the opinion. The court said, We have thus held that in cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the actions based on abstention, but also in otherwise appropriate circumstances decline to exercise jurisdiction... By contrast, we have held that when federal courts may stay actions for damages based on abstention principles, we have not held that these principles support outright dismissal or remand. I'm obviously referring back to their common law action for damages. Well, Your Honor, I haven't seen any cases in the Supreme Court or this court that suggest that it's statutory actions for damages. And, of course, this is not a statutory... I've seen a lot of avoiding of Quackenbush, which was a nightmare when it was written. Well, there is a lot of avoiding of that. And we would suggest that's improper. But I will make the point... Rather than avoid it, you just limit it to what it holds. This is not a statutory action for damages. The statute does not give them a cause of action. That's an issue for another day, not this court. But we think it's not a question where they were invoking a cause of action in the statute. And with that... I understand your position. Thank you. I'll reserve the balance of my time. Thank you. Good morning, Your Honors, and may it please the Court. My name is Garrett Brushhouse, and I have the privilege of representing the plaintiff, Appali, City of Creve Coeur, in this case. So this case, as we heard, asks whether DirecTV and other companies should be paying a gross receipts fee under Missouri's Video Services Provider Act, an act that no court, other than the state court, on the motion to dismiss in this case, has ever interpreted. The district court below remanded the case for a second time on the basis of the Supreme Court's comedy doctrine, which six federal courts have now applied the same way, under nearly identical circumstances, in cases that are essentially the same as this case, and have all reached the same result. And so, we ask that the court affirm, and it can do so for two independent reasons. The first one goes to the timeliness issue, that goes to a jurisdictional issue. I'll touch on that just briefly. As we heard, DirecTV removed this case for a second time, and it was a year after the first remand to state court. The exception that they're trying to invoke, 28 U.S.C. 1446B, it traditionally applies to jurisdictional issues, and Mr. Charns even discussed a prototypical example, where maybe you can't ascertain the amount in controversy initially, and then later on, during discovery or during some other matter, it becomes ascertainable, and of course that can trigger the 1446B3 exception there. But we aren't talking about a jurisdictional issue here. Instead, we're talking about... What strikes me as the central question is, the question of whether fees and taxes are distinct for comedy principles. If they're not, then it was an untimely removal, right? Is that your argument? Forget law, the case, and everything else. That's how the district court approached it, and I think that is one way to look at it. We look at it slightly different, because the way we look at it is, the district court's first order had nothing to do with that tax versus fee distinction. Mr. Charns says that... They didn't raise it, probably. And so the point being is that whatever the state court ordered then had no effect on that previous order that the district court had previously entered, and so there is no new change or anything like that that can trigger that 1446B3 exception then. It arguably had an effect, right? Because the district court, in the first instance, based its comedy decision on the fact that it was a tax. Isn't that correct? I don't read the opinion that clearly. It seems more to me, when I re-read the opinion multiple times over the last few days, is that he assumed that the tax-fee distinction didn't matter. When we look at how we made the argument... Which order? The first one? The first one, yes. So the fee-tax issue was there in the first... The way we briefed it is, we briefed the tax issue under the Tax Injunction Act. Because the Tax Injunction Act, of course, as its name implies, involves taxes. But we didn't make that tax-fee distinction in our briefing the first time around, because we've always taken the position that the tax-fee issue doesn't matter for purposes of comedy, because comedy is this... What you argued doesn't matter. It's what they argued. I don't understand why you're making this so hard. You're going out of your way to take the most convoluted approach to the procedural question. Your Honor, I think the reason that we are arguing it is because we do view this as a jurisdictional thing, and so you don't even... I'm not saying it's not an issue. You're just... I said what I thought the issue was, and no, no, no, that's not it at all. And you go into a much more elaborate reconstruction of what was argued and decided the first time around. Well, Judge Locut, I think... The question is whether they can raise this now. Well, Judge Locut, I think you are correct in that, and Judge Coggs, I think you are correct also, that this was first ascertainable. To the extent there was some change that occurred, it was first ascertainable whenever we were filing our briefs. Well, what about counsel's position that that would have forced them to take two positions, and they were arguing it was a tax in state court, and they would have had to argue it was a fee in federal court in the removal papers? So I think there are two answers to that question. First, I think it partly goes back to the district court's first order that didn't really make that distinct tax versus fee distinction. It didn't turn on that. I guess I'll have to reread it, because my recollection, at least, was that the tax determination was slightly more important, but I'll go back and look at it. Yeah, but I think the other thing to keep in mind is that to the extent that they thought that we changed position, then that's us revealing our position, and so that put them on notice of what the position is. But I do want to move on to the heart of the matter, which is whether the district court properly applied Levin and remanded this case a second time for purposes of comedy. And I think that there's an important thing to point out. The briefing said this, and Mr. Charnes said this again. They tried to portray comedy as being limited to, as Mr. Charnes said today, offensive actions by taxpayers. That's essentially exactly what some courts had held in the wake of the Hibbs decision, because of a footnote in Hibbs, the Supreme Court Hibbs decision. And so the Sixth Circuit, the Seventh Circuit, several other cases were started holding that that's what comedy was limited to. And so some courts explicitly said that comedy couldn't apply when an action was increasing the state's coffers, that it was limited to, again, offensive actions by taxpayers. But Levin overturned all of those cases. And Levin said that courts were misreading that footnote from Hibbs. And that's the answer, really the answer to this case. Levin then instructed courts that whenever you have a matter that has the right recipe, as this case does, where it's not only just touching on the fiscal affairs of local governments, but it's also involving a statute that's never been construed by any court except for the state court on the motion to dismiss. And you also have companies that some companies are paying this fee, others are not paying this fee. And so you have all of these recipes that call for comedy in this case then. And that's why remand was proper. Now, Mr. Johns wanted to talk about the Quackenbush case. And I want to point out a couple of things related to the Quackenbush case. And the first is that it explicitly recognized that the Supreme Court's McNary case was an action at law for damages. That's a comedy case where the Supreme Court did apply comedy to an action at law for damages. And so it recognized that this has been done in the comedy branch of abstention. And it also drew a line to a case called Huffman in the Supreme Court where the Supreme Court recognized that declaratory judgment actions can be subject to comedy even if there's follow-on relief. And the reason being is because there's some discretion there for our federal courts when it comes to declaratory judgment actions. And Judge Loken's right. That is what our case is essentially. This isn't a pure action at law just for damages. We're talking about a fundamental disagreement between the parties about the reach of this act and whether or not it can apply to these types of companies. And so that's why we are clearly seeking a declaratory judgment, asking the court to construe this statute, determine whether or not it applies to these types of companies. We're also seeking an injunction, which is obviously equitable relief. We're seeking an equitable accounting. And so we're seeking the follow-on relief that precedes. If your count three threw this in the Quackenbush's jaws, what do we do? I would first disagree that it threw it in there. Of course you would. Come on. But I want to explain why I don't think that's right. I asked you a what do we do question. I didn't ask you for more argument. Well, I think you interpret the way, what you do is you interpret that count three as just describing the follow-on relief. That's just a belt and suspenders count. But that's not what it says. Well, I think that's how we intended it to be. It's just making sure. You pled damages. You use the word damages. But follow-on relief from a declaratory judgment, courts use the word damages for that all the time. We have represented cities in these types of actions for a number of years. You're urging us to rewrite your complaint. We're not urging you to rewrite the complaint. What we're saying is that type of follow-on relief where we're just. Give me a case where a court has said, oh, well, they didn't really mean it. And rejected Quackenbush's otherwise controlling. Well, what I can give you is I can give you the McNary case, which Quackenbush recognized was a case about damages. And I could also give you the Ninth Circuit case of Fredrickson, which explicitly said that comedy applies to damages. And I also can give you the City of Fishers case, where the pleadings were very, very similar. And the Seventh Circuit said that comedy applies here. But was the Quackenbush argument waived in Fisher? Or am I misremembering that? There were several arguments that were waived in City of Fishers. I think that was all dicta, I think, if I remember, on Quackenbush. In the Fisher case. The part of that opinion was dicta, but they did go through the arguments and reach the decision we're wanting to reach here. I think Judge Scudder said, if it hadn't been waived, here's how we would have ruled. But I don't think it goes beyond that. Yeah, I would agree that's dicta. I would also point out the Seventh Circuit's Johnson v. Orr case. That is another case holding that comedy can apply to damages. And again, that goes back to Quackenbush itself, recognizing that McNary had reached that holding. So, I think that when it comes to the comedy doctrine, this issue has been fairly settled. And to my knowledge, this would be the first court to hold otherwise in the area of comedy. Of course, under other abstention doctrines, it could be read in different ways. But because you have the McNary court, so many other courts recognizing that comedy can apply to actions like this, it's been pretty settled that comedy can apply in these types of cases. And so really, what this goes back to then, is the court had the legal authority to apply comedy, and it's just a matter of whether she abused her discretion. And she went through 11, discussed 11, and she faithfully went through the factors that added up to the recipe needed for comedy to apply in 11. And she found that those same factors were present here. Just like the city of Fishers has done, just like a Georgia federal court has decided now, just like a Louisiana federal court has decided now, just like an Illinois federal court has decided now, and just like an Indiana federal court has decided now as well, that these are the types of cases where comedy should apply. And the reason is, is because this is touching on what these local governments can and can't collect in fees. Where do these fees go? It's probably in the record, I don't recall. Do they go into the general fund of the local government, the city? Your Honor, that's still something that needed to come out in discovery to be clear, whether it's completely tied to right-of-way usage. But generally speaking, they go to the general fund. But then, obviously there is right-of-way usage. That wasn't in the record in the state court decision related to fees versus taxes? It wasn't because we were on the motion to dismiss stage still at that point, and so it was pre-discovery. We've made a lot of progress in the state court case at this point, but we aren't to the summary judgment stage yet. Although we're making progress. The point being though, these fees, it does go to what the local governments can receive. And comedy is a recognition that because of federalism, because we're in a government that recognizes dual sovereignties, that we have to be very careful when we're talking about a federal court telling the local governments what they can and can't collect, because it's their very lifeblood. It's how they perform their functions. It's how they maintain their streets and perform their right-of-way maintenance. And so, the other thing that Levin was looking at too, as it's looking at, well, this is an issue that's novel, and we should let the state courts be in this important area. It's an area where the state courts are best positioned to make these types of determinations. One of the things that was at issue in Levin was constitutionality. Constitutionality is at issue here too. Defendants have been arguing that this is unconstitutional not only under the federal constitution, but also under the state constitution, under the Hancock Amendment. Well, if their Hancock Amendment is right, that could have humongous implications on this entire fee scheme. So, this is a very important issue. It's a very novel issue, and this is something that is best left to the state courts to decide in the normal course, because as Levin said, the state courts are more familiar with how to deal with something like the Hancock Amendment. Judge Benton, Your Honor, is very familiar with the Hancock Amendment as well. But from a general standpoint, we should leave this to the state courts to make a determination of what to do about these things. So, all of those factors, the recipe is there for comedy. The district court correctly exercised her discretion in remanding this, and we would ask this court to affirm that decision. If there are no other questions, I will take my seat, and thank you for your time. Thank you. All right. I'm going to try to make two quick points. The first is with respect to Quackenbush, I'd refer the court to this court's Yamaha case where it talks about damages writ large. It does not limit the Quackenbush principle to common law damages. Page 603-604, the court said, When monetary damages are sought in addition to injunctive relief, and the federal court is not asked to declare a state statute unconstitutional in order to award damages, the case should not be dismissed. That's our situation here, exactly, and I think what the Supreme Court has said and what this court has said is that Quackenbush applies. All right, this has been covered. I have a question. If your proposition that comedy is a removability, ascertainability question, if we disagree with that, that's the end of the case, isn't it? If I understand your question, I think that if you agree with the city's position that removability means there's federal question jurisdiction, then yes, because abstention occurs only when there is federal question jurisdiction. So if I'm understanding your... No, no, no. That's not... This is hard to articulate, and that's why I wanted to try it with you again. As I understand your argument, it's that under 1446D, removability is linked with remandability, and case law, as you read it, has said that abstention is a removability issue as opposed to a... Well, there's diverse, there's whatever. If you're wrong about that, if abstention is simply a defense to remand, then this appeal is over because this was not a timely removal, right? I think I did. I'm not sure I'm following your question, but I think I disagree with you. Well, I mean, I'm stating my result is unfriendly. That's why I'm not sure how to frame the question. I'm not sure how you're framing it. Well, let me frame it two different ways, which is, number one, when it's clear, and I'm not sure which one you're getting at, so I'll state both. Number one, when it's clear in the state court, either because of a state court order or in the right case because of the position that a litigant takes, it's definitively the case that there's federal question jurisdiction, then the 30-day clock starts to move. And our position was until there was the state court order saying, yeah, these are fees, that that clock didn't move. And on fees, I mean, if the fees and tax issue is only relevant to abstention, if that's true, and I believe that's accurate, then possibly this was untimely, right? Because it does not go to removability. Well, I think it does go, it goes to whether the abstention was proper and that there's a different ground for abstention. The court initially abstained because it was a tax. And if you read the district court's first remand order, the word tax is mentioned repeatedly. If you read their motion to remand or brief in support of their motion to remand, it focuses heavily on the fact that this is a tax, and the Tax Injunction Act was their primary argument. Well, say again, why wasn't this untimely? This belated second, you know, this... Because the district court the first time said, because it's a tax, we have to abstain. And when it became clear, when the state court said, it's not a tax, it's a fee, that changed the basis for, changed the abstention argument and gave us a different and new abstention argument, and therefore it allowed a second removal. But the court remanded the first time, right? The court did, yes, sir. Yes, it didn't just stay. It remanded. It did remand. And we upheld or did not interfere with the remand. You denied review. So you had to have, you had to remove a second time. We had to remove it a second time, which the courts say, you can't remove on the same basis. And your basis for removal is that the district court got it wrong in remanding the first time. No, the basis was that the first time the district court remanded because it found it to be a tax, but that turned out not to be correct. State court said, no, it's not a tax, it's a fee, and that led to a different reason why the court should abstain. But that could have been argued in opposing the first remand. Well, it could have been because the court. This isn't a law of the case problem. It's a that wasn't preserved problem. No, I don't think that's right, Your Honor. They came in. That's why I'm, how do you get around that reasoning? Because the city, this is the city's charge, right? This is their assessment. They came into federal court and said, this is a tax. Levin tax, comedy applies. The federal district court said, it's a tax, and therefore we have to remand. When they got to state court, they pulled a 180 and said, oh, it's actually not a tax, it's a fee, to avoid the Hancock Amendment. Fees and taxes, our position is, are treated differently for comedy purposes. But you could have had that go around the first time. That was all in the, it wasn't on the table. It was there to be put on the table. Well, I'm not sure that that's, I mean, we could have argued contrary to what the city. Yeah, this is. Argued, our position is this is. That's a fee. To be clear. And therefore, comedy doesn't apply. I'm sorry, Your Honor. To be clear, our position to this day is that this is a tax. This is a tax that's subject to the Hancock Amendment. So that's, again, you're suggesting that we take a position that is not our position. Well, you make a litigation decision on whether you want to be in state court challenging the Hancock Act or you want to go for a remand. I mean, that's a litigation decision, a strategy, isn't it? Yes, and to be clear, our position was that even if, and we argued this in federal court, that even if it was a tax, the comedy doctrine did not apply. But the fact that it's a fee, we think, makes it even clearer. The First Circuit, for example, has definitively held that the Levin comedy doctrine does not apply to fees. Judge Ambrose of the Third Circuit has a very long concurring opinion. So we think it changes the basis for the argument and, therefore, allowed us to. The mini finality principle here is you don't get multiple bites at the remand removal apple. We go around it once, and we can review that initial remand order, and we're asked to do so, but not on this basis. Well, I disagree with Your Honor if you're suggesting that the law is you can only remove a case once. The Federal Circuit. Well, I know you're going to get into mounting controversy in all those diversity cases. But this is something that's on the table from the outset. All right. I think you've helped clarify what your position is, and we'll think about it. And the other issues, it's a complex case. It's been well briefed and argued, and we'll take it under advisement.